IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-01691-MSK-KLM

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

STUART W. FUHLENDORF,

    Defendant.
_____

**ORDER COMPELLING THIRD PARTY TO RESPOND TO SUBPOENA**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant's **Motion to Compel Production of Documents Responsive to Subpoena** [Docket No. 1; Filed July 16, 2010] (the "Motion"). The subpoena recipient, third-party Ehrhardt, Keefe, Steiner & Hottman, P.C. ("Ehrhardt"), filed a Response in opposition to the Motion on August 17, 2010 [Docket No. 11], and Defendant filed a Reply on August 31, 2010 [Docket No. 12]. The Motion has been fully briefed and is ripe for resolution. Accordingly,

IT IS HEREBY **ORDERED** that the Motion is **GRANTED** for the reasons set forth below.

The subpoena at issue here was served by Defendant in an underlying lawsuit that is pending in the United States District Court for the Western District of Washington, No. C09-1292-MJP. Pursuant to Fed. R. Civ. P. 45(c)(2)(B)(i) & (3)(A), I have jurisdiction over the dispute because the subpoena was issued by this Court. "Subpoenas issued under Rule 45 'constitute process of the issuing court, and are enforced by that same court.'"

*Jennings v. Short-Elliott-Hendrickson, Inc.*, No. 05-cv-01056, 2007 WL 2045497, at *1 (D. Colo. July 10, 2007) (unpublished opinion) (quoting *In re Matter of Certain Complaints Under Investigation*, 783 F.2d 1488, 1495 (11th Cir. 1986)).

The subpoena seeks documents from a Colorado-based accounting and auditing firm. *See Motion* [#1] at 1-2. Specifically, Defendant seeks production by Ehrhardt of the audit file of a single client, Intelligentias, Inc., which is no longer in business. *Id.* at 2; *Reply* [#12] at 8 n.5. The requested documents are "believed to contain information critical to [the] defense," as they should speak to whether Defendant "misled the public by fraudulently accounting for a transaction with Intelligentias, including specifically with respect to Intelligentias's economic substance and ability to pay amounts owed."[1] *Motion* [#1] at 2. Given that Intelligentias is now defunct, Defendant asserts that he has been unable to obtain or replicate the requested financial information from other sources. *Id.*; *Reply* [#12] at 6 & n.3. According to Defendant, Ehrhardt has refused to search for or produce any documents responsive to the subpoena. Defendant contends that the documents are relevant to his defense in the underlying securities litigation and that the subpoena is narrow in both time and scope. *Id.* at 2, 6-7, 9-11. Finally, Defendant argues that no privilege exists to prevent production. *Id.* at 8-9.

By contrast, Ehrhardt contends that "the subpoena [at issue] is a broad brush

---

[1] The allegations in the lawsuit stem from Defendant's former position as chief financial officer of a public company named Isilon and his involvement in five alleged fraudulent financial transactions, including one between Isilon and Intelligentias. *Response* [#11] at 2. With respect to that transaction, which involved an agreement that Intelligentias would purchase hardware from Isilon and that Isilon would purchase software from Intelligentias, Plaintiff "alleges that the accounting was improper because [Defendant] knew 'there was no legitimate business purpose or economic substance to the deal,' and 'that collectability was not assured' from Intelligentias for the amount it would owe." *Motion* [#1] at 4 (citation omitted).

document with 26 categories of documents and 15 definitions." *Response* [#11] at 1.[2]

Ehrhardt also contends that the material sought is not relevant to the underlying lawsuit. *Id.* at 5-8. Further, Ehrhardt alleges that the documents are entitled to protection pursuant to the "accountant client privilege." *Id.* at 8-11. Although Ehrhardt acknowledges "that the weight of authority in other circuits rejects the application of the accountant client privilege," according to Ehrhardt, "[t]here are no opinions in this Circuit directly on point holding that there is no accountant client privilege." *Id.* at 9-10. To this end, Ehrhardt asks "this Court to find a common law accountant client privilege in this instance." *Id.* at 10. Finally, Ehrhardt contends that the documents sought are confidential and subject to protection from disclosure. *Id.* at 11-12.[3]

As an initial matter, the Court rejects Ehrhardt's final two arguments. First, there is no federally-recognized accountant client privilege.[4] *Couch v. United States*, 409 U.S. 322, 335 (1973) ("[N]o confidential accountant-client privilege exists under federal law, and no state created privilege has been recognized in federal cases."). The Tenth Circuit has noted as much when it stated that "it is well settled that there is no confidential accountant-client privilege." *In re Grand Jury Proceedings*, 658 F.2d 782, 784 (10th Cir. 1981); *Srebnik v. Dean*, No. 05-cv-01086, 2006 WL 2790408, at *10 (D. Colo. Sept. 26, 2006)

---

[2] The subpoena actually contains twenty-four definitions. *Subpoena* [#2-2] at 4-6.

[3] In its Response, Ehrhardt contends that "Requests numbers 3, 4, 5 and 25 are not at issue" because it does not possess any documents responsive to those categories. *Response* [#11] at 5.

[4] The parties do not appear to dispute that federal law applies here, although Ehrhardt argues that the Court should be guided by the recent evolution of state law on this issue. *Response* [#11] at 9-10.

3

(unpublished decision) (recognizing that where federal law applies, there is no accountant-client privilege). The Court is not inclined to delve deeper into this issue particularly given that, if such a privilege did exist, it would protect the client, not the accountant. *See generally Weck v. Dist. Court of Second Judicial Dist.*, 408 P.2d 987, 992 (Colo. 1966). As the client at issue here is no longer a viable business, the Court is hard-pressed to view the present case as the optimal one to create new law or contradict well-established law.[5]

Second, to the extent that Ehrhardt contends that the requested documents are protected by state confidentiality laws or professional ethics code, these protections must yield where federal law requires disclosure. *See In re Petition of Borden Co.*, 75 F. Supp. 857, 859-60 (N.D. Ill. 1948) (refusing to apply state confidentiality law regarding accountant files sought by subpoena); 1 Am. Jur. 2d *Accountants* § 11 (2010) (noting that because no accountant-client privilege exists in federal law, "[a] client's disclosure of documents directly to an auditor, accountant, or tax analyst destroys confidentiality . . . [and a]ll information contained in an accountant's workpapers that pertains to financial affairs of the accountant's client is a proper subject for discovery"); *see also In re Grand Jury Proceedings*, 607 F. Supp. 2d 803, 807 (W.D. Tex. 2009) (recognizing that state confidentiality laws are preempted by federal subpoena authority); *Rubin v. Katz*, 347 F. Supp. 322, 323-24 (E.D. Pa. 1972) (noting that it is not the responsibility of the federal

---

[5] To the extent that Ehrhardt contends that Intelligentias "is still in existence," it provides no support for this conclusory statement. *See Response* [#11] at 9. Indeed, this statement is contradicted by Ehrhardt's acknowledgment that Intelligentias's former president was unable to direct Ehrhardt to any individual in "current management," see *id.,* and Defendant's averment that Intelligentias has taken no company actions since September 2008 when its board resigned and it ceased operations. *See Reply* [#12] at 8 n.5 (citing *Larson-Bright Affidavit* [#2] at 3 & Exh. H).

courts to police an accountant's compliance with his professional code of ethics). In addition, any confidentiality concerns can and will be addressed via prescribed production parameters, e.g., that all documents produced are to be used solely for the purposes of this litigation and, where appropriate, filed under seal pursuant to any requirements set forth in the appropriate District's Local Rules. Further, I note that a Protective Order exists in the underlying case to protect the parties and third parties. *See Reply* [#12] at 8.

As to Ehrhardt's objection based upon the alleged undue burden imposed by the subpoena, I find this argument to be unsubstantiated. As explained by Defendant, he seeks the entirety of Intelligentias' file, with certain limitations. Apart from making copies and eliminating documents which do not fall within defined categories, the burden imposed here appears no greater than that ordinarily experienced by a third-party subpoena recipient. Ehrhardt fails to provide any compelling evidence to the contrary, e.g., the number of documents in the file or the amount of man/woman hours it would take to comply with the subpoena, etc. "When a party files a motion to compel and asks the Court to overrule certain objections, the objecting party must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable." *Sonninno v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670 (D. Kan. 2004). In addition, I note that Defendant has offered to pay all reasonable costs of production. *Reply* [#12] at 3. On the present pleadings, I find that Ehrhardt has failed to substantiate its burden objection and, therefore, I decline to quash the subpoena on this basis. *See Klesch & Co. v. Liberty Media Corp.*, 217 F.R.D. 517, 524 (D. Colo. 2003) (noting that objecting party has burden to show why a discovery request is objectionable, and that burden cannot be

5

sustained merely by asserting "boilerplate claims that the requested discovery is oppressive, burdensome or harassing").

As to Ehrhardt's primary objection, i.e., that the subpoena is overbroad and does not seek relevant information, Ehrhardt argues that evidence of Intelligentias' financial condition is amply available in the public domain. *Response* [#11] at 6. Although Ehrhardt concedes that Defendant's stated purpose for the documents "might have some merit," it objects to producing any documents requested by the subpoena because "the precarious financial condition of Intelligentias was . . . disclosed in each and every financial filing made with the SEC during the company's short financial life." *Id.* Ehrhardt argues that Defendant "seems intent on trying to create a litigation sideshow" and attempting to uncover some shortcoming in the way Ehrhardt handled Intelligentias' financial management. *Id.* at 7. Ehrhardt also argues that the number of categories of documents sought by the subpoena are unnecessarily broad. *Id.* at 3.

By contrast, Defendant contends that the requested documents are relevant to the SEC's allegation

> that [Defendant] committed fraud and related misconduct by playing a role in improper revenue recognition with respect to the Intelligentias Transaction, and in particular with respect to issues concerning the economic substance of the Transaction and Intelligentias's ability to pay. Accordingly, there can be no question that documents relating to the Transaction, Intelligentias's business and substance, Intelligentias's capital position and finances, etc., are relevant and may be critical to [the] defense.

*Motion* [#1] at 4. In addition, Defendant argues that the documents sought by the subpoena "are believed to likely address many topics relevant to this case, including the nature of the Transaction, the relationship between Intelligentias and Isilon and/or [Defendant], the substance (or lack thereof) of Intelligentias's business, business plans, and

6

products, and Intelligentias's ability to pay amounts owed, among other relevant issues." *Id.* at 7; *see also Reply* [#12] at 5. Finally, Defendant contends that the subpoena "is narrow both in subject mater (the file for one client) and time (Ehrhardt represented Intelligentias for little more than a year)." *Reply* [#12] at 3.

On balance, I agree with Defendant. First, Ehrhardt fails to substantiate its overbreadth argument. *Klesch*, 217 F.R.D. at 524. The number of categories of documents sought, on its own, does not demonstrate overbreadth. Nor it is sufficient to argue that a third party unrelated to the litigation should not be subjected to the burden of complying with the subpoena. Fed. R. Civ. P. 45 contemplates that third parties may be subject to some inconvenience in responding to subpoenas. Only demonstrable undue inconveniences warrant protection. Second, as to Ehrhardt's relevance objection, "[r]elevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." *Cardenas v. Dorel Juvenile Group, Inc.*, 232 F.R.D. 377, 382 (D. Kan. 2005) (citations omitted). I find that Defendant has made that showing here. In addition, I credit Defendant's contention that information available in the public domain does not sufficiently speak to the aspects of his defense which the documents requested by the subpoena are anticipated to address. Accordingly,

IT IS FURTHER **ORDERED** that Ehrhardt shall respond to the subpoena at issue without objection and produce all responsive documents in its possession on or before **September 24, 2010**.

IT IS FURTHER **ORDERED** that the documents produced in response to the

subpoena shall be used solely for the purposes of the underlying litigation and that any other use is not permitted absent express permission from the Court and, if consistent with the existing Protective Order in this case, such documents may be filed under seal pursuant to the requirements set forth in the appropriate District's Local Rules.

Dated: September 7, 2010

BY THE COURT:
/s/ Kristen L. Mix
U.S. Magistrate Judge
Kristen L. Mix